USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/26/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VALENTINO S.p.A., an Italian Corporation,

Plaintiff,

-against-

MRINALINI, INC., a Delaware Corporation,

Defendant.

---

1:23-cv-2319 (MKV)

OPINION AND ORDER
GRANTING MOTION TO
CONFIRM ARBITRATION
AWARD

**MARY KAY VYSKOCIL, United States District Judge:**

This is one of two cases on the Court's docket between New York-based fashion designer and manufacturer, Mrinalini, Inc., and Italian fashion company Valentino S.p.A., relating to Mrinalini's allegations that Valentino S.p.A., and its subsidiary, Valentino U.S.A., Inc. (together, "Valentino") repeatedly stole its copyrighted fashion designs and misappropriated the unique stitching technique that Mrinalini had developed to bring those designs to life. In the original action before this court, *see Mrinalini, Inc. v. Valentino S.p.A.*, No. 1:22-CV-2453 (MKV), the Court compelled arbitration pursuant to a mandatory arbitration clause in a purchasing agreement between the parties to determine the arbitrability of Mrinalini's claims in the first instance and stayed all proceedings in the action pending arbitration.

Subsequently, an arbitrator appointed by the Chamber of Arbitration of Milan ("CAM") issued a final arbitration award in favor of Valentino. Valentino S.p.A. then commenced this action under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 207 *et seq*., and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, by filing a petition to confirm and enforce the final arbitration award. For the reasons discussed below, Valentino's petition and subsequent motion to confirm and enforce the arbitration award are GRANTED.

<h2 style="text-align:center">BACKGROUND[1]</h2>

The Court assumes familiarity with the underlying facts of this case and its prior decisions in both this action and the related action also pending before this Court.  *See e.g.*, *Mrinalini, Inc. v. Valentino S.p.A.*, No. 1:22-CV-2453 (MKV), 2023 WL 2307479 (S.D.N.Y. Mar. 1, 2023), *reconsideration denied*, No. 1:22-CV-2453 (MKV), 2023 WL 3847292 (S.D.N.Y. June 6, 2023).  The Court reviews only those facts and procedural history relevant to this motion.

**Mrinalini and Valentino Relationship**

Mrinalini, Inc. is a New York-based business that designs and manufactures goods for fashion designers.  *See* AC ¶¶ 26-29.  In 2006, Mrinalini began working with the Italian fashion designer Valentino S.p.A.  AC ¶ 30.  In the early years, Mrinalini would generally manufacture goods for Valentino S.p.A. using original Mrinalini designs.  AC ¶ 30.

Things changed in 2014, however, when Mrinalini started functioning less as a designer and more as a contract manufacturer.  AC ¶ 36.  Mrinalini and Valentino S.p.A. memorialized this new relationship in 2014 when they agreed to "General Purchasing Conditions."  AC, Ex. A (the "Purchasing Agreement").  This Agreement contained an arbitration clause, which provided that "[a]ny dispute that may arise connected to the Agreement as well as associated or connected to its execution, interpretation, enforcement, [or] validity, shall be referred . . . to a sole arbitrator appointed by the Milan Chamber of Arbitration, pursuant [to] the Rules of the Milan Chamber of Arbitration."  AC, Ex. A § 22.2.

Over time, the relationship between the parties began to deteriorate.  In or around 2019,

---

[1] The facts are taken from the evidence cited in the parties' Local Civil Rule 56.1 statements [ECF No. 26 ("Pet. 56.1"), ECF No. 36 ("Pet. Reply 56.1"), and ECF No. 34 ("Resp. 56.1")], the declarations submitted in connection with the pending motion [ECF Nos. 27, 28, 33-1], and the exhibits attached thereto.  See Fed. R. Civ. P. 56(c)(1). Certain background facts are also taken from Respondent Mrinalini's Amended Complaint ("AC") filed in related Case No. 22-cv-2453 (MKV) at ECF No. 37.

Mrinalini accused Valentino of misappropriating certain of Mrinalini's alleged trade secrets.  Resp. 56.1 ¶ 6.  Soon thereafter, Valentino and Mrinalini began negotiations in an attempt to resolve the disputes between them.  Resp. 56.1 ¶ 7.

**The Milan Arbitration**

Unable to resolve the disputes, in February 2022, Valentino S.p.A. initiated an arbitration in Italy relating to contractual issues captioned *Valentino S.p.A. v. Mrinalini Inc.*, Chamber of Arbitration of Milan ("CAM"), Arbitration No. 1022 (the "Arbitration").   Resp. 56.1 ¶ 6.[2] Mrinalini submitted its Response to the Request for Arbitration, which Mrinalini describes as "primarily an objection to the arbitration."  Resp. 56.1 ¶ 14.  Additionally, Mrinalini challenged the appointment of the Arbitrator, alleging that he was not "objectively independent." Resp. 56.1 ¶¶ 16-24.   The CAM Arbitration Council subsequently denied Mrinalini's objections, and thereafter, the arbitration proceeded.  Resp. 56.1 ¶¶ 16-24.  Valentino submitted a Statement of Claims, and Mrinalini submitted a Statement of Defense raising several objections to the jurisdiction of the Arbitrator and arguments on the merits, including opposing the additional claims for relief addressed in Valentino's Statement of Claims.  Resp. 56.1 ¶¶ 25-31.  Mrinalini submitted twenty-five exhibits and legal authorities in support of its Statement of Defense.  Resp. 56.1 ¶ 31. The parties also made several appearances before the Arbitrator, both in-person and remotely, including two case management conferences, a pre-hearing conference, and a final oral hearing where the parties were given the opportunity to present arguments and rebuttals.  Resp. 56.1 ¶¶ 32-33, 44-47.  At the conclusion of the final hearing, the Arbitrator asked the parties whether they thought post-hearing briefing was necessary.  Resp. 56.1 ¶ 48.  Both parties agreed it was not. Resp. 56.1 ¶ 49.

---

[2] Around that same time, Valentino S.p.A. filed a separate action in the Italian court in Milan, relating to disputes between the parties regarding trade secrets and other non-contractual offenses.  Resp. 56.1 ¶ 10.

**Mrinalini Commences the First S.D.N.Y. Action**

In March 2022, while the Milan arbitration was pending, Mrinalini filed a complaint in this Court against Valentino S.p.A. and Valentino U.S.A., asserting various claims, including copyright infringement, unjust enrichment, misappropriation of trade secrets, conversion, breach of contract, and unfair competition.  *See e.g.*, Case No. 1:22-CV-2453 (MKV), ECF No. 1. Attached to the complaint were the Purchasing Agreement (Ex. A) and Mrinalini's copyright registrations (Ex. B). [Case No. 1:22-CV-2453, ECF No. 1-1-2].  Mrinalini later added additional claims for copyright infringement and unjust enrichment in an Amended Complaint.  [Case No. 1:22-CV-2453, ECF No. 37.]

Valentino moved to dismiss the Amended Complaint primarily on the grounds that the Purchasing Agreement contained a clause which subjected the dispute to arbitration.  *See e.g.*, *Mrinalini, Inc. v. Valentino S.p.A.*, No. 1:22-CV-2453 (MKV), 2023 WL 2307479, *2 (S.D.N.Y. Mar. 1, 2023).  In the alternative, Valentino requested that the Court stay the proceeding and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*.  *Id*.  Meanwhile, Mrinalini moved to enjoin the pending Milan arbitration, arguing that the dispute at issue in that arbitration did not fall within the scope of the Purchasing Agreement or the arbitration clause contained therein.  *Id*. at *3.

The Court held that the extremely broad mandatory arbitration clause in the Agreement reflected "clear intent" by the parties to arbitrate "at least *some* disputes."  *Id*. at *4.  The Court stated that the question was "whether the claims that Mrinalini asserts in [the related] action fall *within the scope* of the Purchasing Agreement."  *Id*.  The Court did not, however, decide whether the current dispute fell within the scope of the Agreement because "[t]he Agreement, by its terms, also expressly commits to arbitration 'any dispute . . . associated or connected to its execution,

interpretation, enforcement, [or] validity.' "  *Id*. (quoting AC, Ex. A § 22).  Given that the parties disagreed over what constitutes an arbitrable matter under the Agreement—which would necessarily entail the resolution of some "enforcement" or "interpretation" of the Agreement—the Court held that the "parties [] clearly and unmistakably assigned to the arbitrator the question of whether Mrinalini's claims set out an arbitrable dispute."  *Id*.  Accordingly, the Court compelled arbitration to determine the arbitrability of Mrinalini's claims in the first instance and stayed all proceedings in the related action pending arbitration.  *Id*. at *5.

Mrinalini filed a motion for reconsideration, primarily arguing that the Court did not properly consider the General Purchasing Conditions in concluding that Mrinalini consented to have an arbitrator decide issues of arbitrability.  *See e.g.*, *Mrinalini, Inc. v. Valentino S.p.A.*, No. 1:22-CV-2453 (MKV), 2023 WL 3847292, *1 (S.D.N.Y. June 6, 2023).  The Court denied Mrinalini's motion reiterating that the Court "did not determine whether the relevant disputes were connected to the Agreement," only that "the question of arbitrability" is one for the arbitrator, not the Court.  *Id*.

**The Final Arbitration Award and Second S.D.N.Y. Action**

After the Court issued its opinion and order compelling arbitration, the Milan Arbitrator issued an 86-page final arbitration award in favor of Valentino.  [ECF No. 5-2 ("the Final Award")].  Thereafter, Mrinalini filed an appeal of the Final Award in the Court of Appeals of Milan in Italy.[3]  Resp. 56.1 ¶ 101.

---

[3] On appeal, Mrinalini argued, *inter alia*, that (1) the CAM erred in rejecting Mrinalini's petition for recusal of the Arbitrator, and (2) the Arbitrator lacked jurisdiction to rule on Valentino's proposed arbitration claims.  Resp. 56.1 ¶¶ 103–05.

Meanwhile, Valentino S.p.A. commenced this action under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention" or the "Convention") by filing a petition to confirm and enforce the Final Award from the Milan arbitration. [ECF No. 1]. With leave of the Court, Valentino S.p.A. subsequently filed a motion to confirm and enforce the final arbitration award. [ECF No. 24.] In support of the motion, Valentino S.p.A. filed a Memorandum of Law [ECF No. 25] ("Pet. Br."), its Local Rule 56.1 Statement [ECF No. 26] ("Pet. 56.1"), and accompanying declarations with attached exhibits [ECF Nos. 27, 28]. Mrinalini filed a Memorandum in Opposition [ECF No. 33] ("Resp. Br."), and a counter Local Rule 56.1 Statement [ECF No. 34] ("Resp. 56.1"). Valentino S.p.A. submitted a Reply Memorandum of Law [ECF No. 35], and an additional Rule 56.1 Statement [ECF No. 36] ("Pet. Reply 56.1").

After briefing concluded, Valentino S.p.A. filed notice that the Court of Appeals of Milan in Italy dismissed Mrinalini's petition to suspend the Final Award. [ECF No. 37.]

## LEGAL STANDARD

Federal jurisdiction over a foreign arbitral award arises from Chapter 2 of the FAA, 9 U.S.C. §§ 201–08, which empowers the federal courts to enforce awards issued in arbitrations, such as this one, governed by the New York Convention, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38.[4] When a party applies to confirm an arbitral award under the New York Convention, "[t]he court *shall* confirm the award *unless* it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207

---

[4] The parties agree, as does the Court, that the New York Convention governs this commercial dispute because this action "involve[s] parties domiciled or having their principal place of business outside [the United States]." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (internal quotation marks omitted).

(emphasis added); *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009).

Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award. *See* New York Convention Art. V; *see also Telenor Mobile*, 584 F.3d at 405.  The party *opposing* enforcement of the arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies.  *See* New York Convention Art. V(1); *Telenor Mobile*, 584 F.3d at 405; *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 313 (2d Cir. 1998).  "The burden is a heavy one, as the showing required to avoid summary confirmance is high."  *Telenor Mobile*, 584 F.3d at 405 (citations, ellipsis, and internal quotation marks omitted); *see also Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007).

Ultimately, "[g]iven the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is *very limited* in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Telenor Mobile*, 584 F.3d at 405; *Encyclopaedia Universalis*, 403 F.3d at 90 (emphasis added).  Indeed, an application to confirm a foreign arbitral award "is [essentially] a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 786 (2023) (citations omitted).  Therefore, the review of foreign arbitral awards overall is " 'extremely deferential' to the findings of the arbitration panel." *Id.* (quoting *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).

## DISCUSSION

I.  **Respondent Has Proven No Grounds to Refuse or Defer
    Recognition or Enforcement of the Final Arbitration Award.**

    A.  The Award Does Not Contain Decisions on
    Matters Beyond the Scope of the Submission
    to Arbitration Under Article V(1)(c).

Mrinalini argues first that the Court should refuse to recognize the Final Award because the Court erroneously submitted the question of arbitrability of Mrinalini's claims to arbitration in the first instance.  Specifically, Mrinalini argues that the General Purchasing Conditions (and its included arbitration clause), upon which the Court relied in compelling arbitration, was not an "agreement," nor did it present "clear and unmistakable evidence" that the parties agreed to submit questions of arbitrability to an arbitrator.  Resp. Br. 4–5.  Therefore, Mrinalini argues, the Final Award contains decisions on issues that were not properly before the arbitrator.   Resp. Br. 4–5. Although Mrinalini cites in support of this argument none of the seven limited and exhaustive grounds on which recognition and enforcement of an arbitral award may be refused, the Court broadly and liberally interprets Mrinalini's argument to invoke Article V(1)(c).

Article V(1)(c) provides that confirmation may be denied if "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." *See* New York Convention Art. V(1)(c).  This provision "basically allow[s] a party to attack an award predicated upon arbitration of a subject matter not within the agreement to submit to arbitration," although such defense should "be construed *narrowly*."  *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 976 (2d Cir. 1974).

In essence, Mrinalini seeks a *third* bite at the apple to argue that the parties did not agree to submit questions of arbitrability to an arbitrator.   Mrinalini's argument is unpersuasive,

meritless, and has already been rejected by this Court *multiple times*.  *See Mrinalini, Inc. v. Valentino S.p.A.*, 2023 WL 2307479, at *2; *see also Mrinalini, Inc. v. Valentino S.p.A.*, 2023 WL 3847292, at *1.  Nevertheless, for the sake of clarity, and at risk of otherwise wasting additional judicial resources, the Court reiterates its prior holding that the "parties [] clearly and unmistakably assigned to the arbitrator the question of whether Mrinalini's claims set out an arbitrable dispute." 2023 WL 2307479 at *4.

Specifically, in granting Valentino's motion to compel arbitration and denying Mrinalini's motion to enjoin, the Court found that the broad mandatory arbitration clause contained in the parties' General Purchasing Conditions reflects "clear intent" by the parties to arbitrate "at least *some* disputes."  2023 WL 2307479 at *4.  Namely, "[t]he Agreement, by its terms, [] expressly commits to arbitration 'any dispute . . . associated or connected to its execution, interpretation, enforcement, [or] validity.' "  *Id.* (quoting AC, Ex. A § 22).  Therefore, given that the parties disagreed over what constitutes an arbitrable matter under the Agreement, which would necessarily entail the resolution of some "enforcement" or "interpretation" of that Agreement, the Court held that the question of arbitrability was one for the arbitrator, not the Court.  *Id.*; *see also LAVVAN, Inc. v. Amyris, Inc.*, No. 21-1819, 2022 WL 4241192, at *2 (2d Cir. Sept. 15, 2022) (quoting *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019)) ("In the absence of specific language evidencing such an intent, '[b]road language expressing an intention to arbitrate all aspects of all disputes,' we have said, 'supports the inference of an intention to arbitrate arbitrability.' ").

Thus, when the Arbitrator ruled on the arbitrability of certain of Mrinalini's claims in the Final Award, the Award did *not* "deal[] with a difference not contemplated by or not falling within the terms of the submission to arbitration" nor did "it contain[] decisions on matters beyond the scope of the submission to arbitration."  *See* New York Convention Art. V(1)(c).  On the contrary,

the Arbitrator's Final Award was entirely consistent with the Court's determination that the question of arbitrability was one for the arbitrator.  The Arbitrator did just that; he decided the arbitrability of Mrinalini's claims.  *See e.g.*, Resp. 56.1 ¶¶ 54–64.

To the extent that Mrinalini argues that the arbitrator erroneously *decided* that certain of its claims were arbitrable, this argument is improper under Article V(1)(c).  The Second Circuit has expressly held that "[r]egarding Article V(1)(c) challenges specifically . . . the defense does not sanction second-guessing the arbitrator's construction of the parties' agreement."  *Olin Holdings Ltd. v. State*, 73 F.4th 92, 108 (2d Cir. 2023) (internal quotations omitted).  For these reasons and the other reasons already discussed in the Court's prior opinions, Mrinalini has not met its "heavy" burden that Article V(1)(c) applies or warrants denial of the confirmation of the Final Award.[5]  *Telenor Mobile*, 584 F.3d at 405.

    B.   <u>The Award is Binding on the Parties and Has Not</u>
         <u>Been Set Aside or Suspended Under Article V(1)(e)</u>

Mrinalini also argues that the Court can deny or adjourn enforcement pursuant to Article V(1)(e) where the Final Award has not yet become binding on the parties.  Resp. Br. at 11.  At the time the parties submitted their briefing on the motion to confirm and enforce the Final Award, Mrinalini had previously filed an appeal challenging the Award decision in Italy.  Resp. 56.1 ¶ 101.  Accordingly, in its Opposition, Mrinalini argued that the pending appeal in Italy could succeed in vacating or reversing the arbitration award.  Resp. Br. at 11.

---

[5] At various points in its Opposition, Mrinalini attempts to redirect its analysis to the impact of the Final Award on its claims in the related federal action before this Court.  *See e.g.*, Resp. Br. at 1, 5, 10, 14.  The Court has previously instructed the parties that the confirmation and enforcement of the Final Award and the Final Award's impact on the claims in Case No. 1:22-CV-2453 are separate issues, that will be addressed one at a time.  [Case No. 1:22-CV-2453, ECF Nos. 73–75.]  Because the Final Award's impact on the claims in Case No. 1:22-CV-2453 is not presently before the Court, the Court concerns itself exclusively with whether to confirm the Final Award irrespective of its impact, if any, on Mrinalini's claims in Case No. 1:22-CV-2453.

The Second Circuit has held that "[a] court has discretion to adjourn enforcement proceedings where an application has been made in the originating country to have the arbitral award set aside or suspended." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316 (2d Cir. 1998). However, since briefing on this motion ended, the Court of Appeals of Milan has dismissed Mrinalini's petition to suspend the Final Award. [*See* ECF No. 37.] Specifically, the Milan Court of Appeals found that there was "no immediate 'evidence' of the merits of the grounds of nullity of the [Final Award]." *Id.*

While the parties agree that a further appeal to the Supreme Court of Cassation (the highest court of appeal in Italy) would be possible, Resp. 56.1 ¶ 108, Mrinalini has submitted nothing to the Court to indicate that it has or ever intends to appeal further in the Italian courts. As such, the Court finds that Mrinalini's argument pursuant to Article V(1)(e) is mooted.

C.  Respondent Fully Participated in the Arbitration
And Was Able to Present Its Case Fully

Lastly, Mrinalini argues that the Court should refuse to enforce the Final Award pursuant to Article V(1)(b) because the "arbitration was unfair."[6]  Resp. Br. at 10.

Article V(1)(b) provides that confirmation may be denied if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." Article V(1)(b) "essentially sanctions the application of the [enforcing] state's standards of due process." *Pagaduan v. Carnival Corp.*, 830 F. App'x 61, 62 (2d Cir. 2020) (citing *Iran Aircraft Indus. v. Avco Corp.*, 980

---

[6] Mrinalini also cites Article V(1)(d) for its argument that it was "unable to present its case in arbitration." However, Article V(1)(d) provides refusal of a foreign arbitration award where "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." The Court struggles to understand how this provision relates to Mrinalini's argument that it was unable to present its case. Notwithstanding, the Court addresses Mrinalini's concerns that the "arbitration [sic] not in accordance with the agreement" above in Discussion I.A.

F.2d 141, 145 (2d Cir. 1992) (internal quotation marks omitted)).  Under American standards of due process, a party is entitled to "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Jones v. Flowers*, 547 U.S. 220, 226 (2006).

Specifically, Mrinalini argues that, as a small company, it had few resources to hire Italian counsel and pursue an expanding and rapidly moving arbitration in Italy.  Resp. Br. at 10.  Mrinalini also argues that Valentino S.p.A. "changed course" when it added copyright infringement and trade secret misappropriation claims late in the arbitration, over Mrinalini's objections.  Resp. Br. at 10.  These arguments are veiled and improper challenges to the Arbitrator's rulings on both the scope of the arbitration and the merits of the Final Award.  *See e.g.*, *Olin*, 73 F.4th at 108; *see also supra* Section I.A.

The Second Circuit has declined to find grounds to deny confirmation under Article V(1)(b) where a party, as Mrinalini did here, "submitted multiple lengthy briefs . . . and affidavits before the [arbitrator] but chose to focus its arguments almost entirely on whether the [arbitrator] had jurisdiction over the case."  *Pagaduan*, 830 F. App'x at 62.  Here, it is undisputed that Mrinalini submitted various briefs related to the arbitration, including a Response to Valentino S.p.A.'s Request for Arbitration (*see* Resp. 56.1 ¶ 14) and a Statement of Defense, which included twenty-five supporting exhibits and legal authorities (*see* Resp. 56.1 ¶¶ 25-31).  Notably, the Statement of Defense raised several objections to the jurisdiction of the Arbitrator *and* arguments on the merits, including opposing the additional claims for relief addressed in Valentino's Statement of Claims, which the Arbitrator later rejected.  Resp. 56.1 ¶¶ 25-31.

It is further undisputed that Mrinalini was represented by both Italian and U.S. counsel and made several appearances, both in-person and remotely, including two case management

conferences, a pre-hearing conference, and a final oral hearing where the parties were given the opportunity to present arguments and rebuttals.  Resp. 56.1 ¶¶ 32–33, 44–47.  In fact, at the conclusion of the final hearing, the Arbitrator asked the parties whether they thought post-hearing briefing was necessary, and *both* parties agreed it was not.  Resp. 56.1 ¶¶ 48–49.

In light of these undisputed facts, the Court cannot find that Mrinalini was unable to present its case in violation of Article V(1)(b).  Instead, Mrinalini was provided ample opportunity to present its evidence and arguments.  That Mrinalini devoted the majority of its arguments and efforts in the arbitration to "whether the [arbitrator] had jurisdiction over the case" may have "left [Mrinalini] with limited room to argue the merits of [its] case . . . but it does not follow that [it] was 'unable to present [its] case.' "  *Pagaduan*, 830 F. App'x at 62.

## II.   Attorney's Fees

Finally, Valentino S.p.A. seeks attorneys' fees and costs for the confirmation proceeding.  It does not point to any statutory or contractual authority for such legal fees, instead relying on the Court's inherent equitable powers.

Under the "American Rule," a prevailing party is ordinarily *not* entitled to attorneys' fees except where expressly provided by statute or contract.  *See Int'l Chem. Workers Local 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985).  Pursuant to its inherent equitable powers, however, a court may award attorneys' fees when the opposing party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id*.  As applied to suits for the confirmation and enforcement of arbitration awards, "when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded."  *Id*.  (citation omitted).

Valentino S.p.A. argues that Mrinalini's Opposition to enforcing the Final Award is based, in large part, on its unfounded allegation that the claims it brought against Valentino were never

arbitrable—an argument which "directly contradicts and rehashes arguments that both this Court and the Arbitrator have rejected." Pet. Br. at 18.  In support of its argument, Valentino S.p.A. cites an unreported, two-decades-old district court opinion, which held that attorneys' fees and costs incurred in confirming an arbitration award are properly awarded where the respondent contests confirmation of the arbitration award with "no legitimate basis" for doing so.  *See Matter of Arb. Between P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, No. 00-cv-7120 (RLC), 2001 WL 38282, at *4 (S.D.N.Y. Jan. 16, 2001).  Even accepting this premise as true, Mrinalini also submitted additional arguments under Article V(1)(b) and (e).  Although the arguments under Article V(1)(b) and (e) were ultimately rejected by the Court, the Court cannot conclude they had "no legitimate basis."

The Court also notes that while, Mrinalini has failed to pay for the costs awarded to Valentino by the Arbitrator as of the date Valentino S.p.A. filed the motion to confirm the Award, *see* Resp. 56.1 ¶ 93, "[f]ailure to pay an arbitration award immediately, by itself, does not necessarily constitute bad faith."  *See In re Arb. Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005).

Ultimately, the Court does not find that Mrinalini's actions warrant the exceptional award of attorneys' fees.  Accordingly, Valentino S.p.A.'s request for attorneys' fees is DENIED.  Valentino S.p.A.'s expenses will, however, be allowed to the extent that costs are available to the prevailing party.  *See* Fed. R. Civ. P. 54(d)(1); Local Civil Rule 54.1; 28 U.S.C. § 1920.

## **CONCLUSION**

For the foregoing reasons, Valentino S.p.A.'s petition and subsequent motion to confirm and enforce the Final Award is hereby GRANTED.  The Clerk of Court is respectfully requested to close the motion at ECF No. 24 and terminate this case.

**SO ORDERED.**

Date:  **February 26, 2024**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**